25-211. We are going to hear an oral argument on that. I apologize. So why don't we start there and invite counsel for the movement, Attorney Parks. We weren't going to forget you. So whenever you're ready. Thank you, Your Honor. And I guess if you could just start by clarifying the posture we're in. We had received your letter indicating that the district court did, I understand, adjourn Mr. Hanratty's criminal trial to July 21st. Is that right? Yes, Your Honor. That's right. That's the current state of play. That's the current state of play. But you're still looking for a stay beyond that, right? Yes, Your Honor. We're ready to hear you. You can go between the two microphones. Okay. Will that be? Can you all hear me all right? Great. Good morning, Your Honors. May it please the Court. My name is Carrie Parks. Counsel this morning for my client who's defendant and appellant, John Arthur Hanratty, who's sitting with me at counsel table this morning. So, Your Honors, we believe there's really two issues on this motion to stay the trial pending the interlocutory appeal that we filed back in February. One is, what is the relevant controlling standard? And two is, assuming that the standards with the government suggested, why those factors should still compel a stay? So, I'm going to start with the Coinbase standard, because the government's effectively conceded, by not really raising any argument in their opposition papers, that if Coinbase and the Griggs principle do control this motion, that this Court should stay the case, because there's no doubt that infringement on the Sixth Amendment right to counsel permeates everything about the pending criminal trial. Now, it's true that the Coinbase holding is very specific to arbitration. But why we've cited Coinbase is because of the reasoning that Coinbase applies. And so the key point in the Coinbase reasoning is applying this background Griggs principle that the ---- But why, in this case, when counsel has been appointed anyway, does it make any difference? Well, Your Honor, that's a great question. The essential reason why is that even though counsel's been appointed, there potentially still is this Sixth Amendment right to counsel, right to defense issue here. If a counsel is there, and if there's money for witnesses, then what's going on? I mean, you know, why shouldn't we wait for a case where it is a real issue before we get into whether the arbitration case applies here or not? Thank you, Your Honor. As a practical matter, because being appointed under CJA rates and CJA constraints is simply not the same thing as having your own private funds to retain your private counsel, particularly in this case, which involves it's a four-page indictment. I mean, could you just ---- I think we're looking for practicalities here. Sure. I'll give you ---- I mean, I would assume that if we asked you, given the fact that you are currently paid CJA rates, will you represent your client less vigorously, you would say no. I'm going to represent my client with the same vigor. So I think we're looking for specifics. What is it that you or you would do differently, either personally or, I think the question was, would you call fewer witnesses? So tell us what's going on. That's a great question, Your Honor. Of course, I can't stand up here and say, you know, that's not fair. I'm going to tell you, Your Honor, practical effect is that my firm and I have not been able to devote the resources to Mr. Hanratty that we otherwise would like to do or be able to do because we're operating in this sort of hobbled state, right? So is it ---- You're spending fewer hours working on the case? What does that mean? What ---- Yeah. So here, I'll give you no particular order. Spending fewer hours case than we would otherwise, right? In this situation, I'm the only person who was both working on the interlocutory appeal and preparing for trial at the same time. And that's because you're not willing to work for less money? I guess I'm just trying to ---- Well, yeah. So to be really, really practical, it's because I have to maintain more or less my full usual paying caseload while continuing to represent Mr. Hanratty. I've worked in really large law firms where, frankly, CJA practice is considered pro bono practice. There's lots of people devoted to it. And, frankly, the rates at those firms are a few thousand dollars per hour, partly in a way to offset and make sure that all those partners are still being able to make money, pay their overhead, et cetera, right? That's not the situation in this case. We are not the cheapest shop in town, but we certainly don't charge, you know, we don't charge Wachtell rates, right? We don't have that kind of spread. And I am one of three equity partners in our New York office, which is the primary office. So the fact of the matter is, is that in this case, you know, as of January, the whole for my firm's 2024 budget was close to 10% of our annual revenue, right? So what does that mean in the meantime, especially if I want to make sure we can devote resources to Mr. Hanratty? Because, frankly, as a lawyer, the duty of loyalty is really important to me, especially in a criminal case. I don't have to tell your honors how many friends go by the wayside once somebody is indicted and not wanting to leave this man alone. But it does mean that in the meantime, I have to keep more or less a full caseload, right? So, for example, I was here on March 27th arguing an appeal in a totally different case involving Delaware law and securities law, right? Another practical effect is that we delayed hiring new associates and personnel who could help with this case as kind of as long as we possibly could. And so we looked at this, and we're like, trial's really coming, and we want to do what we can to help no matter what. So, you know, in that situation, in an ideal world, I would have had associates helping me in the fall so that we could get ready for this, what was supposed to be starting yesterday, right? And instead, my team, they're wonderful, and I mean no denigration to them, but, you know, is a law clerk who's still waiting, pending admission, and a young woman who's a former ADA who we weren't even able to bring on board until March, right? And one final question, as it's on my part. If for some reason the court were to deny your motion, I assume that you would prefer to have us order your appeal be expedited? Yes, Your Honor. And at what, I'll make this up, but would you be willing to file your brief within 30 days? Well, we actually filed our brief back. You did file it, okay. We filed it on February 21st. So the blue brief has been filed. Right. So the moving brief's been filed. And remind me, has the red brief been filed? No, and they set a date of May 27th for their red brief filing deadline. And just one point. Okay. And sorry, on the practical matter, I think one other. Can I just add something?  Do you have a due date for your reply brief? Oh, I don't recall what it is, Your Honor. I think it's about a month after that. But we do hear cases through the end of June. So we could, in theory, order your appeal to be expedited if it has not already been calendared for oral argument before the summer break and in advance of the scheduled trial on July 21st. Yes, and we would welcome that. Do you want it expedited? I would love that, frankly, Your Honor. I'd love to move these things forward for all the reasons we know and also the practical reasons of this. Okay. I think we have your argument. Let's hear from the government. Thank you. And perhaps, well, I'll let you introduce yourself first. One moment, Your Honor. Your Honors, may it please the Court, Danielle Kudlow on behalf of the government on the motion before this Court and also below. Judge Schofield properly refused to say the defendant's trial pending interlocutory appeal after evaluating the unique facts of this case against the neck and factors. And I want to address the first point regarding an automatic stay in Coinbase. There is no – Can I back you up? And you'll have a little time to get there. I would like to just understand the procedural status. We have now a new trial date of July 21st. Is that correct? That is correct, Your Honor. And the blue brief has been filed in this appeal. The government's brief is due on May 27th, then? That's correct. Do you happen to know offhand when the reply brief is scheduled? No problem if you don't. I do not. I believe it's approximately 14 days later. I mean, I would assume it's the usual.  Okay. Would the government have any objection to having – given the fact that your red brief is due on May 27th, to our ordering expedited oral argument following that? I can't imagine. Once the briefs are filed, who do you care when it's argued, right? Absolutely not, Your Honor. Okay. And that, in theory, could happen all – it could be heard by this Court panel, merits panel, well in advance of the scheduled trial date, right? That is correct, Your Honor. Okay. That's all I had on the procedural stuff. But if you want to proceed. Your Honor, now address – after addressing the procedural matters on the legal arguments before this Court, the Supreme Court in Coinbase did not overturn decades of precedence in the traditional rule that the decision whether to enter a stay pending an interlocutory appeal rests within the discretion of the trial court. And at issue, the majority was very clear in Coinbase that the language itself, the sole question before the Court, is whether a district court must stay its proceedings while the interlocutory appeal on arbitrability is pending. And it was careful to cabin its decision within Section 16A. So I, again, want to know why we should get into that question about what the Supreme Court did or did not do in this case where practically we can have the whole thing dealt with anyway without ever really getting to that issue. And, you know, we shouldn't reach to decide questions which may or may not be difficult. We decide to stay, expedite the appeal, the appeal will be held, and the whole thing will be dealt with. So why should we try to decide what the Supreme Court did or did not do in Coinbase and so on? Your Honor, you're exactly right and agree that if we can have – if we can have this resolved on the merits prior to the July 21st date, that is in the interest of all parties. I would note that the language in Netkin by the Supreme Court in 2009 did note that appeals sometimes take time. They may take a little or a lot. So if there are any further questions with respect to the legal issues here, if the merits are not decided before July 21st, I'm happy to take those. But if the Court is fine addressing just the procedural matters, that's also well. Yeah. I don't think we have anything further. Okay. Unless you want to add something. No, no. I do not at all, Your Honor. I believe we rest on our papers and we hope that this can be resolved before the 21st trial date.  We will take the motion under advisement. So thank you all very much for coming here today.